UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| AMY WASHINGTON, | : | Case No. 1:07-cv-230 |
| Plaintiff, | : | Barrett, J. |
| | : | Black, M.J. |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding plaintiff "not disabled" and therefore unentitled to disability income benefits insurance ("DIB") and/or Supplemental Security income ("SSI"). (*See* Administrative Transcript ("Tr.") 15-25) (ALJ's decision).)

**I.**

In March and April 2004, plaintiff filed applications for DIB and SSI alleging a disability onset date of October 21, 2001, due to back pain and mental problems. (*See* Tr. 53-55, 324, 26.)

Upon denial of her claims on the state agency level, she requested a hearing *de*

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

*novo* before an ALJ.  A hearing was held on July 12, 2006, at which plaintiff appeared with counsel and testified.  (*See* Tr. 399-452 .)  A vocational expert was also present and testified.  (Tr. 443-49.)

On August 2, 2006 , the ALJ entered his decision finding plaintiff not disabled. That decision became defendant's final determination upon denial of review by the Appeals Council on January 17, 2007.  (Tr. 5-8.)

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since October 21, 2001, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.)

3. The claimant has the following severe combination of impairments: myofascial pain; bipolar affective disorder, not otherwise specified; anxiety disorder; polysubstance abuse and dependance; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift up to 20 pounds occasionally and carry up to 10 pounds frequently.  Because of pain, the claimant requires an alternate sit/stand job, changing position every hour. The claimant is limited to occasional stooping.  Because of her substance abuse/dependance, she should avoid working around unprotected heights and hazardous machinery.  The claimant is at least capable of understanding, remembering, and carrying out one to three step instructions.

> She would do best with minimal interactions with coworkers, supervisors, and the public. The claimant should also avoid the stress caused by a constantly rapid pace, such as a machine assembly line driven pace.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on November 25, 1969 and was 31 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 CFR 404.1563 and 416.963). She is still a younger individual.
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules, as a framework, support a finding that the claimant is "not disable," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
>
> 11. The claimant has not been under a "disability," as defined in the Social Security Act, from October 21, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-25.)

The ALJ concluded that plaintiff was not entitled to disability insurance benefits or supplemental security income.

On appeal, plaintiff, appearing *pro se*, seeks remand under sentence six of 42 U.S.C. § 405(g). Plaintiff seeks to introduce new evidence that corroborates her

complaints of pain. (*See* Docs. 14-16.)

Plaintiff also appears to argue that the ALJ erred: (1) in evaluating her pain, credibility and subjective complaints; (2) in formulating plaintiff's residual functional capacity ("RFC"); and (3) in evaluating plaintiff's mental impairments. Each assertion will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

## A.

Plaintiff argues first that the ALJ erred in evaluating plaintiff's pain, credibility, and subjective complaints. Specifically, plaintiff asserts that the ALJ erred in finding a lack of objective medical evidence to substantiate her claims of disabling pain.

It is well established in the Sixth Circuit that subjective complaints can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986). Where a complaint of pain is not fully supported by objective medical findings, the ALJ should consider the frequency and duration of pain, as well as other precipitating factors, including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

An ALJ is not required, however, to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability. *See Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In light of the ALJ's opportunity to observe plaintiff and judge her subjective complaints, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *See Buxton v. Halter*, 246 F.3d 762, 774 (6th Cir. 2001); *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987) (*per curiam*); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

In evaluating plaintiff's subjective complaints, the ALJ properly considered

whether there was an underlying medical evidence to confirm the severity of the alleged pain arising from that impairment, or whether the underlying condition was one of such severity that it could reasonably be expected to produce the alleged disabling pain.  *See Duncan*, 801 F.2d at 853.  The ALJ set out the reasons why he felt that plaintiff was less than credible when she alleged disabling pain.  The ALJ noted that, despite her repeated complaints of pain to her doctors, her objective test results were essentially normal (Tr. 20-21, 288, 290-91).

For example, in December 2002, when plaintiff presented to the emergency room with complaints of ankle pain, no x-rays were even taken because there was no swelling, no bony tenderness, and she was walking on the ankle (Tr. 20, 266).  As the ALJ noted, plaintiff's physical examinations have generally been normal except for intermittently diminished sensation on the right side and positive trigger points (Tr. 20-21, 119-20, 120-21, 129, 181, 209, 214-18, 242-43, 247, 266-67, 288, 290-91, 279).  Thus, the ALJ reasonably found that the record did not contain objective findings, either diagnostic or clinical, to support plaintiff's claims of disabling pain.  (Tr. 21).

The ALJ also noted that plaintiff had a history of drug abuse and dependence, which negatively impacted her credibility.  (Tr. 21, 245, 310, 312).  Plaintiff admitted that she had used marijuana on a daily basis since she was twelve years old but had stopped almost two months prior to the hearing.  (Tr. 432).  She also noted that she could not afford to keep up her cocaine habit (Tr. 433).  She went to a pain clinic to obtain Percocet but was denied because of a positive cocaine test, so she got Percocet from "different

-6-

people" (Tr. 435). She stopped using drugs because she no longer had access to the drugs (Tr. 436).

The ALJ also found that plaintiff was not compliant with her mental health treatment, both in missing appointments and in not taking her medication as prescribed (Tr. 21).

Because the ALJ properly articulated his reasons for rejecting plaintiff's subjective claims regarding her limitations, and because the ALJ's reasons are supported by the record, the ALJ's finding on credibility is entitled to deference. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (*per curiam*); *see also Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987) (*per curiam*); *Houston v. Secretary of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

**B.**

Plaintiff also appears to challenge the ALJ's RFC finding that she is capable of performing light work. Plaintiff argues that the ALJ erred in failing to give deference to the RFC assessments provided by Dr. Pham and Ms. Keyes.

Dr. Pham diagnosed chronic myofascial pain and bipolar disorder and opined that plaintiff's pain and symptoms were severe enough to "constantly" interfere with her attention and concentration but she was still capable of low stress work. (Tr. 319-20). She could walk for two or three city blocks without rest or severe pain. (Tr. 320). She could sit for 90 minutes at a time; stand for about 15 to 20 minutes before she needed to

sit; and could stand/walk/ and sit for a total of about two hours a day (Tr. 320-21). Every 30 minutes, she needed to walk for about ten minutes and needed to take an unscheduled break for a 10 to 15 minute rest before resuming work (Tr. 321). He further noted that she would probably miss more than four days of work in a month (Tr. 323).

In May 2006, Ms. Keys, P.C.C., plaintiff's therapist, completed a form concerning her ability to work. (Tr. 313-17). She noted a diagnosis of bipolar affective disorder, anxiety disorder due to myofasical pain, and cannabis dependence (Tr. 313). She felt that Ms. Washington had a moderate restriction in her activities of daily living; marked difficulties with maintaining social functioning; frequent deficiencies of concentration, persistence, or pace; and "continual" episodes of deterioration or decompensation (Tr. 317).

The ALJ, however, gave no weight to Dr. Pham's June 2006 opinion, finding that Dr. Pham was not a specialist nor were his extreme restrictions supported by his own treatment records (Tr. 23, 319-23). As noted by the ALJ, Dr. Pham reported several neurological findings but he was not consistent in his reporting and no other doctor reported neruological deficits. (Tr. 23).

The ALJ is not required to accept any medical opinion not substantiated by the record, even that of a treating physician. *See Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence."). More

importantly, as the ALJ noted, plaintiff admitted being able to perform the exertional requirements of light work (Tr. 23, 214).

With respect to plaintiff's mental RFC, the ALJ explained that he gave no weight to plaintiff's therapist, Ms. Keys, because her findings were inconsistent with her treatment notes and were not supported by the evidence of record.

The ALJ considered Ms. Keys' report to be deficient because she failed to mention the "significant" contribution of plaintiff's noncompliance and substance abuse.  (Tr. 24, 313-17).  Ms. Keys, who listed cannabis dependence as a diagnosis, did not discuss the impact of such dependence on plaintiff's symptoms (Tr. 313).  Ms. Keys also noted "continual" episodes of decompensation (Tr. 317).  However, as noted by the Commissioner, an episode of decompensation is defined as one that lasts at least two weeks at a time.  Thus, continual episodes would suggest hospitalization or, at least, a serious level of treatment.  *See* Listing 12.00, Introduction.

However, plaintiff received very little treatment.  In May 2005, she saw a nurse at the psychiatric emergency service, and reported stress concerning her older son's difficulties with the law (Tr. 245).  She first saw Dr. Emery in October 2005 and, although she went to some therapy sessions with Ms. Keys, she stopped going just three months later (Tr. 300).  In January 2006, plaintiff reported that she stopped going to therapy with Ms. Keys because she did not want to "tell somebody my business and pry" (Tr. 300).  Dr. Emery noted that plaintiff would call "when she is interested in furthering her treatment." (Tr. 300).  Plaintiff returned the next week and explained that she would take the prescriptions but was not interested in therapy.  (Tr. 298).

In April 2006, plaintiff reported that she was "stable" and that she was uncertain whether she wanted to continue services at the clinic (Tr. 295). She was simply "relaxing" at home. (Tr. 295).

Furthermore, in July 2004, Dr. Orosz, a state agency psychologist, opined that plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social interactions; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation (Tr. 234). Dr. Orosz opined that plaintiff remained capable of one and two-step tasks as well as more complex tasks (Tr. 239). She was able to get along with co-workers and supervisors, in at least a superficial manner (Tr. 239). She was able to adjust to ordinary stress and routine changes in the workplace (Tr. 239). Later that month, Carl L. Tishler, Ph.D., reviewed Ms. Washington's records and agreed with Dr. Orosz's findings. (Tr. 224, 239).

Thus, in formulating his RFC, the ALJ thoroughly explained the weight given the various medical sources and the reasons therefore. (Tr. 23). Accordingly, the undersigned finds that the ALJ reasonably accommodated plaintiff's physical and mental impairments by restricting plaintiff to light work. Although the RFC selected by the ALJ might not be the same RFC that plaintiff would have selected, the ALJ's RFC is, without question, within the permissible "zone of choice" which the Sixth Circuit discussed in *Felisky, supra.* The ALJ's RFC is therefore not subject to reversal.

### III.

Ms. Washington supplied evidence to the Appeals Council and in several filings to this Court. (*See* Docs. 14-16 ) Evidence that is presented to either the Appeals Council

-10-

or to this Court is not evidence that is part of the Court's substantial evidence review of the ALJ's decision. Instead, it may be used for the sole purpose of determining whether the criteria is met under 42 U.S.C. § 405(g) to allow a remand under sentence of that statute. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

In order to obtain a sentence six remand, plaintiff must show that the evidence is new, that it is material, and that there exists good cause for the failure to have incorporated this evidence in the prior record. 42 U.S.C. § 405(g), *Cotton*, 2 F.3d at 695.

Plaintiff argues that, had the evidence been available to the ALJ, a different decision (presumably in her favor) would have been issued. She argues that this evidence validated her debilitating pain that she had repeatedly described during the administrative process. Plaintiff's assertions are unavailing, however.

Here, none of the Appeals Council evidence is new. As noted by the Commissioner, with few exceptions, the evidence (Tr. 343, 346, 349-51, 361-62, 365, 367, 373, 375-76, 378, 381) duplicates records already in the record. Compare Tr. 336-40 to Tr. 319-23; and 357-58 to 279-80. Moreover, all of the medical evidence pre-dates the ALJ's decision of August 2, 2006 (Tr. 25, 335-98). Thus, all of the "missing" evidence could have been submitted to the ALJ, especially since the source – University Hospital – had already provided information to the Agency.

Moreover, the supplemental evidence submitted by plaintiff , *i.e.*, the diagnostic studies, x-rays and MRI of the spine, Dr. Martinez's RFC assessment, and plaintiff's prescription list, all post-date the ALJ's decision and therefore do not establish disabling impairments prior to the ALJ's decision. *See Sizemore v. Sec'y of Health & Human*

*Servs.*, 865 F.2d 709, 712 (6th Cir. 1988) (evidence of aggravated or deteriorated condition not time-relevant).

Accordingly, upon careful review, the undersigned finds that plaintiff's motion for a sentence six remand is not well-taken.

## IV.

In conclusion, the ALJ's findings were supported by substantial evidence and within his "zone of choice."

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner, that plaintiff was not entitled to a period of disability and disability income benefits, be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**


Date:   August 27, 2008                             s/Timothy S. Black
                                                    Timothy S. Black
                                                    United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| AMY WASHINGTON, | : | Case No. 1:07-cv-230 |
| | : | |
| Plaintiff, | : | Barrett, J. |
| | : | Black, M.J. |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN (10) DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN (10) DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).